Margery F. MULBARGER, et al., Plaintiff–Appellants,

v.

ROYAL ALLIANCE ASSOCIATES, INC., and Resources Trust Company, Defendant–Appellees.

No. 00–3157.

United States Court of Appeals, Sixth Circuit.

May 14, 2001.

Before KRUPANSKY, BOGGS, and BATCHELDER, Circuit Judges.

PER CURIAM.

In these eighteen consolidated actions initiated in Ohio common pleas courts and subsequently removed by the defendants to federal district court by reason of diversity jurisdiction, the plaintiff-appellants, each an Ohio resident who had invested in certain limited partnership ventures, have contested the district court's dismissal of their amended complaints for failure to state any claim upon which relief could be granted. Each implicated complaint asserted three causes of action anchored, respectively, in Ohio law fraudulent misrepresentation, negligent misrepresentation, and breach of fiduciary duty, against the investment broker(s) who had sold the plaintiffs those limited partnership interests, to wit, defendant-appellee Royal Alliance Associates, Inc. ("Royal Alliance") and/or defendant-appellee Resources Trust Company ("RTC") (collectively referred to herein as "the defendants"). The plaintiffs, via their common attorneys, have conceded that, for purposes of this appeal, each complaint stated causes of action which were functionally identical to the corresponding counts articulated in the remaining complaints joined herein, and that the differences among them are immaterial.

Each complaint in controversy alleged that the respective plaintiff(s), either in his or her personal capacity or through an estate planning trust, had purchased, and possessed, certain limited partnership investments through either Royal Alliance or RTC. Commencing in 1990 or 1991, and continuing until approximately June 1992, Royal Alliance periodically mailed statements of account to its customers, which the plaintiffs have alleged contained knowingly or negligently false representations of the values of their partnership assets. The plaintiffs have further averred that, beginning in June 1992, and continuing

---

* The Honorable Paul R Matia, United States District Court Judge for the Northern District of Ohio, sitting by designation.

thereafter, Royal Alliance began reporting the true and accurate current fair market values of their portfolios, which either were zero, were sharply reduced vis a vis the previously reported valuations, or were unknown because Royal Alliance lacked material information. The plaintiffs have asserted that, upon receipt of their June 26, 1992 Royal Alliance statements, they were first alerted to that defendant's alleged long-term practice of deliberately inflating the reported current fair market values of their investments.

In support of those allegations, each plaintiff who directed claims against Royal Alliance has affixed, to his or her amended complaint, photocopies of two statements of account issued to him or her by that entity—one dated prior to June 26, 1992, and the other dated June 26, 1992. Those plaintiffs averred that the earlier statements exemplified Royal Alliance's pre-June 26, 1992 standard reporting format and practices, whereas the June 26, 1992 statements illustrated its subsequent standard reporting format and practices. The pre-June, 1992 Royal Alliance statements each contained an explanation that the portfolio "value" figure which appeared thereon was the "original value" (that is, the purchase price) of the investor's assets, *not* the current fair market values of those interests. Those statements further advised the investor that the respective limited partnership(s) had supplied Royal Alliance with the conveyed information, and that "Royal Alliance is not responsible for the accuracy or completeness of that information."

By contrast, commencing with the June 26, 1992 statements, and continuing thereafter, Royal Alliance adopted a new format for its periodic reports to its clients who had invested in public partnerships. The entry formerly headed "value" was now denominated "cost." That figure consti-

tuted the investor's initial monetary expenditure for the corresponding partnership interest(s). The post-June 26, 1992 statements also contained new advisory language, which pronounced, among other things, that "[o]riginal cost does not necessarily represent current market value." Elsewhere on the new periodic statements, Royal Alliance articulated a current fair market valuation of the investor's interest, contrary to its pre-June 26, 1992 practice. In each instance relevant to this lawsuit, the portfolio's market value stated on the post-June 26, 1992 notices were either zero, unknown, or significantly lower than the owner's original cost.

Additionally, those plaintiffs who had either joined RTC as a co-defendant together with Royal Alliance, or who had solely sued RTC, attached to their amended complaints copies of the obverse sides of two quarterly statements issued by that entity to the respective plaintiff(s)—one notice covering the three-month period ending June 30, 1992, and a second quarterly advisory issued on a subsequent date. The latter statements generally reflected decreases in the reported values of partnership interests as compared to the June 30, 1992 statements. However, the RTC statements instructed the recipient: "For valuation method, see reverse side."

Although each plaintiff neglected to append the reverse side of any RTC statement to its amended complaint, the plaintiffs have conceded, through their joint counsel, that the valuation provision articulated on those statements had instructed that the valuation of limited partnership interests (designated "Type X" investments) "[re]mains the purchase price unless [a different] value [was] provided by [the] general partner." Accordingly, RTC afforded its customers notice that the "value" figures associated with their limited partnership investments were presump-

tively restatements of their original purchase price, unless the general partner had furnished a current valuation figure. The RTC reports did *not* represent that RTC had itself determined any fair market valuation for any partnership interest.

The two defendants moved to dismiss all causes of action asserted against them, arguing that each complaint had failed to state any claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). On December 22, 1999, the district court granted that motion, ruling that the complaints had failed to allege specific facts sufficient to support at least two essential elements of the three misrepresentation-related causes of action, namely (1) that the defendant(s) had misrepresented a material fact to the plaintiff(s), and (2) that the plaintiff(s) had justifiably relied to his or her detriment upon any alleged misrepresentation.[1] *See* Fed.R.Civ.P. 9(b); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990).

A lower court's dismissal of a cause of action for failure to state a claim upon which relief can be granted is predicated upon a legal conclusion subject to plenary review. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) should be sustained if, after construing the allegations of the complaint most favorably for the plaintiff by accepting *arguendo* all facts alleged therein as true and indulging every reasonable inference derivable therefrom in the plaintiff's favor, the plaintiff has not alleged a set of facts which could entitle him or her to relief. *Id.* A court is *not* bound to accept either (1) unwarranted inferences, including allegedly inferable "facts" or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint; or (2) alleged legal conclusions. *See Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir.1997); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987).

The district court, in its Opinion and Order entered December 22, 1999, exhaustively examined the allegations of the subject complaints and the legal issues framed by the litigants, concluding that those complaints were facially insufficient to support any actionable claim of intentional misrepresentation, negligent misrepresentation, or breach of a fiduciary duty against either defendant. This reviewing court, based upon its careful and thorough study of the record below, the briefs and arguments of counsel, and the controlling legal authorities, concludes that the trial court's analysis and final judgment were correct as a matter of law. Accordingly, this court adopts the opinion of the district court entered December 22, 1999.

Thus, the dismissals, with prejudice, of the subject complaints are AFFIRMED.

---

1. In diversity cases, the substantive law of the forum state controls. *Hanover Ins. Co. v. American Engineering Co.*, 33 F.3d 727, 730 (6th Cir.1994). In Ohio, a misrepresentation of a material fact by the defendant, and justifiable detrimental reliance by the plaintiff upon that false representation, are each essential elements of a cause of action for either fraudulent or negligent misrepresentation. *See Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 534 N.E.2d 835, 838 (1989); *Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709, 712 (Ohio 1987). Similarly, because the plaintiffs' instant breach of fiduciary duty counts were anchored in allegations of false representations made within the context of an alleged fiduciary relationship, the absence of sufficient allegations of material misrepresentations, or justified detrimental reliance thereon, are likewise fatal to those claims. *See Muglia v. Kaumagraph Corp.*, 64 F.3d 663, 1995 WL 492933, at *3 (6th Cir. 1995).